# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>1) Alberto Marte, )<br>        Defendant. ) | Case No. 16-CR-30044-MGM |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned attorneys, hereby files the Government's Sentencing Memorandum.

The government moves for a sentence of 180 months, which takes into account all the factors set forth in 18 U.S.C. § 3553(a)(1) and (2) and is sufficient but not greater than necessary to accomplish the goals set forth in § 3553(a). The government relies on the following in support thereof.

I.  **ARGUMENT**

    A.  **The nature and circumstances of the offense and the history and characteristics of the defendant.**

        *1.  Heroin distribution is an acute problem in Western Massachusetts*

This Court can consider the significant amount of illegal drug distribution offenses in this community when arriving at an appropriate sentence. In *United States v. Narvaez-Soto*, 773 F.3d 282, (1st Cir., 2014), the First Circuit held that the sentencing Court may properly take into consideration in formulating the appropriate sentence the crime rate in the area in which the defendant committed the offense. That case involved a conviction for carjacking in Puerto Rico in which the Court imposed a sentence which varied upward from the sentencing guideline

range, in part, because "it viewed the defendant's crimes 'as much more serious [in Puerto Rico] than if they had occurred in a less violent society.'" *Id*. at 285-86.

In upholding the sentence the First Circuit held

> In weighing the impact associated with a particular crime, a sentencing court may consider the pervasiveness of that type of crime in the relevant community. This proposition follows logically from the fact that '[d]eterrence is widely recognized as an important factor in the sentencing calculus.' Thus, 'the incidence of particular crimes in the relevant community appropriately informs and contextualizes the ... need for deterrence.'

*Id*. at 286(citations omitted). See also *United States v. Rivera-Gonzalez*, 776 F.3d 45, 51 (1st Cir. 2015) (Court could take into account community-based considerations, including high incidence of violent and gun related crimes when sentencing defendant for drug and gun offenses.)

The government asserts that the same logic should apply to the case at bar. In this case, the defendant stands convicted of several counts related to the distribution of heroin in a city that is besmirched with drug distribution and the violence often associated with it. Heroin has taken a tremendous toll on the communities of Massachusetts, and this particularly true of Springfield. The Massachusetts Department of Health has found that since 2000, there have been an estimated 17,788 opioid-related overdose deaths in Massachusetts.[1] During the period of 2000-2016, Hampden County has suffered 1,023 such deaths.[2] In 2013, Springfield's opioid-related death rate was the highest in Massachusetts and was 65% higher than the overall rate in the Commonwealth.[3] In 2016, 74 opioid-related deaths occurred in Springfield alone.[4] Clearly, at the time the defendant was distributing massive amounts of heroin in Western Massachusetts, he

---

[1] *Data Breif: Opioid-Related Overdose Deaths among Massachusetts Residents*, Massachusetts Department of Health, August 2019

[2] *Number of Opioid-Related Overdose Deaths, all Intents by County 2000-2016*, Massachusetts Department of Health, May 2018.

[3] *Registry of Vital Records and Statistics*, MDPH (MassCHIP 4/14/15; 5/1/15).

[4] *Number of Opioid-Related Overdose Deaths, all Intents by City/Town 2013-2016*, Massachusetts Department of Health, May 2018.

2

was doing so as he watched his neighbors' lives crumble, his city struggle, and the region suffer - all as a result of the heroin he sold. Yet, the defendant chose to profit from this destruction without a concern for the many lives lost and the countless more ruined.

The devastating impact of heroin continues today, despite the spreading use of Narcan and a number of large seizures of heroin by local, state, and federal authorities. In 2018, the number of fatal opioid-related overdoses *increased* in the four counties of Western Massachusetts – the market previously served by the defendant. Hampden County suffered nearly one hundred more deaths in 2018 than in did in 2017.[5] Shockingly, the number of fatal overdoses in Springfield more than doubled in this period, jumping from 38 in 2017 to 80 in 2018.[6] Similarly, Hampshire, Franklin and Berkshire Counties suffered more opioid-related deaths in 2018 than they did in 2017.[7]

In the landscape of this devastating opioid epidemic, where most members of the community saw destruction and despair, the defendant saw an opportunity to profit. Where community members worked tirelessly to help those afflicted with addiction, the defendant preyed upon them. When countless families buried a loved one lost to heroin, the defendant counted his money. To be sure, the defendant preyed upon addicts in a prolific manner. For example, in one single day, the defendant's organization possessed more than six kilograms of heroin which he was planning to process into more than 400,000 dosage units[8] of heroin had

---

[5] There were 208 deaths in 2018 and 114 in 2017. *Number of Opioid-Related Overdose Deaths, all Intents by County 2010-2018*, Massachusetts Department of Health, August 2019.

[6] *Number of Opioid-Related Overdose Deaths, all Intents by City/Town 2013-2016*, Massachusetts Department of Health, August 2019.

[7] *Number of Opioid-Related Overdose Deaths, all Intents by County 2010-2018*, Massachusetts Department of Health, August 2019.

[8] Each kilogram of heroin processed by the MARTE DTO turned to approximately 67,000 dosage units after adding cut.

authorities not intervened and dismantled his operation. At the street level, addicts would have spent approximately $1.4 million on this amount of the defendant's heroin.[9]

In total, the government seized approximately seven kilograms of heroin (PSR ¶ 74) and nearly two kilograms of Fentanyl from the defendant, and this amount represents only a small percentage of the defendant's drug distribution that occurred during this investigation. With each transaction, the defendant had an opportunity to realize the breadth of the harm he was causing, yet he persisted. As evidenced by the defendant's work history, this is not a case where the defendant turned to the sale of heroin in order to support his own habit or because he had no other life skills to rely on. Rather, it is clear that the defendant's decision to distribute heroin was a cold, profit-driven business decision and that he had no concern for those whose lives were ruined in the wake of his pursuit of monetary gain. It is clear that the defendant conducted a cost-benefit analysis and willfully accepted the risk that he would be responsible for the death of innumerable others - and he happily accepted it as a cost of doing business.

The defendant's willingness to risk the lives of others in pursuit of profit did not stop at simply selling heroin. The defendant has also shown a willingness to resort to lethal force in order to protect his drug stash and drug proceeds, as demonstrated by the role firearms played in his Drug Trafficking Organization. The defendant not only deemed it necessary that he possess a firearm to protect his heroin trafficking business, he expected his subordinates to risk their own lives in order to protect his ill-gotten gains. This is demonstrated by the fact that he provided a firearm to at least one subordinate in order to protect the organization's heroin. PSR at ¶ 59.

Therefore, because the defendant was so willing to destroy lives, both with his sale of poison and with physical violence, motivated by nothing more than greed, the government asks that this Court to find that this case merits a sentence of 180 months.

---

[9] Conservatively, a bundle of heroin, which consists of 10 dosage units, sells for $35 at retail in the Springfield area.

**B.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide just Punishment for the Offense.**

A sentence of 180 months reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the charged offenses because it properly balances the defendant's criminal history and criminal conduct with his specific characteristics and the sentence the defendant served as a result of state convictions that occurred for similar conduct.

**C.    The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct.**

As noted *supra*, the number of fatal opioid-related deaths in Western Massachusetts has continued to increase following the defendant's arrest. Therefore, it is clear that others have quickly filled the role of the defendant as a major supplier of heroin in the region. A sentence of 180 months will send a clear message to the next generation of drug dealers and to society that the distribution of heroin will not be tolerated.

**D.    The Need for the Sentence Imposed to Protect the Public From Further Crimes of the Defendant.**

During the period of incarceration, and to a lesser degree during his period of supervised release, the public would be protected from new criminal conduct by the defendant.

**E.    The Need for the Sentence Imposed to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

The defendant would benefit from the additional vocational training and substance abuse treatment that he could participate in during his incarceration.

**F.    The Sentence Takes into Consideration the Types of Sentences Available and the Sentencing Range Established by the U.S.S.G.**

A sentence of 180 months takes into consideration all of the types of sentences available for the crime of conviction.

**II.     CONCLUSION**

    The government moves that based upon the reasons set forth above, the Court impose a sentence of 180 months.

                                               Respectfully submitted,

                                               ANDREW E. LELLING
                                               United States Attorney

                                             */s/ Neil L. Desroches*
                                             NEIL L. DESROCHES
                                             Assistant United States Attorney
                                             300 State Street, Suite 230
                                             Springfield, MA 01105
                                             413-785-0398
                                             neil.desroches@usdoj.gov

<u>Certificate of Service</u>

September 19, 2019

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

           <u>*/s/ Neil L. Desroches*</u>
           Neil L. Desroches
           Assistant United States Attorney